IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 12-cv-2871-WJM-KLM

DEREK B. MILLER

      Plaintiff,

v.

WARNER LITERARY GROUP, LLC, a Colorado limited liability company, and
SARAH WARNER

      Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR DECLARATORY JUDGMENT AND REQUEST FOR EXPEDITED DETERMINATION AND SPEEDY HEARING**

---

Plaintiff Derek B. Miller brings this action against Defendants Warner Literary Group, LLC and Sarah Warner (together "Defendants") arising out of a contract between the parties regarding Defendants' services as a literary agent. Before the Court is Plaintiff's Motion for Declaratory Judgment and Request for Expedited Determination and Speedy Hearing ("Motion"). (ECF No. 12.) For the reasons set forth below, the Motion is granted.

### I. FACTUAL BACKGROUND

The fact necessary to resolve the instant Motion are essentially undisputed and are as follows:

Plaintiff Derek Miller is the author of three novels. (Compl. (ECF No. 1) ¶¶ 10, 14.) Defendant Sarah Warner is a literary agent residing in Boulder, Colorado and she is the principal of Defendant Warner Literary Group ("WLG"). (*Id*. ¶¶ 4-6.)

After finishing his second novel, Miller reached out to Defendants about acting as his literary agent. (*Id*. ¶ 11.) In June 2006, the parties entered into an agreement whereby WLG agreed to act as Plaintiff's literary agent for the purposes of marketing Plaintiff's second novel. (*Id*. ¶ 12.) WLG worked for two years to market the novel but was unsuccessful. (*Id*. ¶ 13.)

In late 2008, Plaintiff finished his third novel, now titled "Norwegian by Night" (the "Novel"). (*Id*. ¶ 14.) On December 13, 2008, Plaintiff signed a second agreement (the "Agreement") with WLG, whereby WLG agreed to act as literary agent for the Novel. (*Id*. ¶ 15.) The Agreement provided that, if a third party publishing or licensing agreement was entered into for the Novel, then WLG would have "exclusive right of representation for a period of three (3) years of the Client and his Work." (ECF No. 12-1.) The Agreement also states: "All modifications, including cancellation, to this contract shall be made one (1) month after written notification and approval by both the Agent and the Client." (*Id*.) The Agreement provides that it is governed by Colorado law. (*Id*.)

In late 2011, Norwegian by Night began to achieve some success. (*Id*. ¶ 21.) A number of third party contracts were entered into for publishing the Novel in different languages. (*Id*. ¶¶ 22, 24, 25, 27 & 32.) The parties had some disagreements during the negotiation of these contracts but Plaintiff continued to allow WLG to represent him. (*Id*. ¶¶ 30-31, 35.)

On March 9, 2012, Plaintiff sent Sarah Warner an e-mail message stating that he wished to end their contractual relationship. (ECF No. 12-2.) The e-mail stated "I

am therefore writing to communicate my desire to amicably terminate our arrangement." (*Id*. (emphasis in original).)  Warner responded to the e-mail, expressing her view that Plaintiff could not unilaterally terminate the Agreement.  (Compl. ¶ 47.)

On March 23, 2012, an attorney acting on Plaintiff's behalf sent a letter to Defendants which stated that its purpose was to serve as "the formal notice of termination of the agency relationship." (ECF No. 12-3 (emphasis in original).)  Despite these actions, Defendants continued to hold themselves out as Plaintiff's literary agent at book fairs around the world.  (Compl. ¶¶ 51, 56-59.)  The Novel is set to be released in the United Kingdom in mid-February 2013.  (ECF No. 12 at 8.)

Based on these facts, Plaintiff brings eight claims: (1) fraudulent misrepresentation; (2) negligent misrepresentation; (3) breach of fiduciary duty; (4) breach of implied duties of good faith and fair dealing; (5) interference with prospective business advantage; (6) extreme and outrageous conduct; (7) slander *per se*; and (8) declaratory judgment. (*Id*. pp. 17-26.)  Defendants' Answer asserts a number of counterclaims against Plaintiff.  (ECF No. 14.)

## II.  REQUEST FOR EXPEDITED CONSIDERATION

Plaintiff asks the Court to consider the instant Motion on an expedited basis because the Novel is scheduled to be published in the United Kingdom in February 2013.  (ECF No. 12 at 8.)  Given this imminent deadline, the Court finds good cause to resolve on an expedited basis the issue of whether Defendants are authorized to continue to act as Plaintiff's literary agent.  The Court therefore grants Plaintiff's request for expedited consideration.  However, because the Court has resolved the Motion on


the submitted papers, the Court denies Plaintiff's request for hearing as moot.

### III.  ANALYSIS

The only claim relevant to the instant Motion is the declaratory judgment claim, which asks the Court to:

> A) declare that i) Miller had the ability to terminate the Agreement based on dissatisfaction or changed circumstances, ii) Miller validly and effectively terminated and revoked Defendants' authority to act as his agent under the Agreement no later than March 23, 2012, and iii) Miller properly terminated the Agreement and it is unenforceable by Defendants, and B) grant Miller such other and further relief as the Court deems just and proper.

(Compl. ¶ 109.)  While the relief sought in this request is broad, the Court construes the instant Motion as significantly more limited.  The Motion relates only to subpart A(ii), which asks the Court to determine Defendants' right to act as Plaintiff's agent after March 23, 2012.  This Order is limited to that narrow issue.

The sole issue to be resolved here is whether either Plaintiff's March 9, 2012 e-mail to Sarah Warner or the March 23, 2012 letter to Defendants terminated the agency relationship between the parties.  Plaintiff contends that these written communications were unequivocal revocations of Defendants' right to act as his agent.  (ECF No. 12 at 7.)  Defendants argue that neither of these communications terminated the agency relationship because, per the terms of the Agreement, the agency relationship can only be dissolved upon consent of both parties.  (ECF No. 25 at 1.)

Restatement (Second) of Agency Section 118 provides that an agent's "[a]uthority terminates if the principal or agent manifests to the other dissent to its continuance."  This section of the Restatement has been adopted by the Colorado

courts.  *See Stortroen v. Beneficial Finance Co. of Colorado*, 736 P.2d 391, 400 (Colo. 1987).  The fact that the Agreement contained a contractual provision stating that it could not be terminated in the absence of mutual consent is of no import.  *See* Restatement (2nd) of Agency § 118 cmt. b (1958) ("The principal has the power to revoke . . . although doing so is in violation of a contract between the parties and although the authority is expressed to be irrevocable.  A statement in a contract that the authority cannot be terminated by either party is effective only to create liability for wrongful termination.").

Defendants' argument that the agency relationship could only be terminated with mutual consent is not in accord with Colorado law.  In *Ireland v. Wynkoop*, 539 P.2d 1349 (Colo. App. 1975), the Colorado Court of Appeals held: "Enjoining the principal from terminating the agency relationship is tantamount to specific performance of the agency contact, which is improper."  *Id*. at 1362 (citing Restatement (2nd) of Agency § 118 (1958) (internal citation omitted); *see also Strategis Asset Valuation & Mgmt., Inc. v. Pacific Mut. Life Ins. Co.*, 805 F. Supp. 1544, 1550 (D. Colo. 1992); 3 Am. Jur. 2d Agency § 329 (2012) ("An agent is not entitled to specific performance of the agency contract.").

Thus, the Court concludes that Colorado agency law plainly permits Plaintiff to terminate the agency relationship.  Given the undisputed facts showing that Plaintiff communicated in writing his desire to terminate the agency relationship effective March 9, 2012, the Court finds that the parties' agency relationship was terminated as of that date.

The Court's holding relates only to the status of the parties' agency relationship following Defendants' receipt of Plaintiff's March 9, 2012 e-mail. The Court makes no determination of the nature of the parties' relationship before March 9, 2012 (including whether Plaintiff and WLG were living up to their respective obligations under the Agreement), whether Plaintiff's termination of the Agreement was permissible or proper under the terms of the Agreement, or whether the Agreement is or was enforceable. Though Plaintiff requests a declaratory judgment on these issues in his Complaint (ECF No. 1 ¶ 109), the instant Motion addresses only the status of the parties' agency relationship following Plaintiff's March 2012 communications to Defendants. Colorado law allows for the possibility that Defendants may be entitled to recover for damages based on Plaintiff's termination of the Agreement, *see Strategis Asset*, 805 F. Supp. at 1550, and the Court makes no judgment on the merits of any such claim. The Court's sole holding in the instant Order is that Plaintiff's March 9, 2012 e-mail to Sarah Warner terminated, as of that date, any prospective agency relationship between the parties.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Plaintiff's Request for Expedited Determination (ECF No. 12) is GRANTED;
2. Plaintiff's Request for Speedy Hearing is DENIED as MOOT;
3. Plaintiff's Motion for Declaratory Judgment is GRANTED; and
4. The Court DECLARES that Defendants were no longer authorized to serve as Plaintiff's agent as of March 9, 2012.

Dated this 30th day of January, 2013.

BY THE COURT:

_____
William J. Martinez
United States District Judge